AGAWAM CANAL COMPANY *vs.* SOUTHWORTH MANUFACTURING COMPANY.

Hampden.   September 27, 1875. — October 26, 1876.   AMES, DEVENS & LORD, JJ., absent.

A canal company granted to a paper manufacturing company "as much water as will be necessary to carry the machinery in a paper mill working eight engines, not exceeding one hundred and sixty pounds weight of rags to each; but the quantity of water so drawn is not to exceed the quantity necessary to carry six thousand spindles at the C. mill during the time said mill runs in the twenty-four hours, and using a wheel as large in proportion to the head and fall as is used in said mill, and of the same construction, unless an improvement is made before the wheel

shall be constructed, in that case to be of the most approved model, if without additional expense; the water to be drawn from the canal at such distance from the surface, and applied to the wheel in such manner, as shall produce the greatest power with a given quantity of water;" and also granted "the privilege of drawing water from said canal in the night-time," provided it did not prevent the pond from being full an hour before sunrise in the morning; and also, "in case the quantity of water named aforesaid, and drawn in the best manner to produce the most power, shall be insufficient to carry said machinery and eight engines," to draw additional water, paying at a certain rate for the additional quantity so drawn. The C. mill was run only twelve working hours a day, and it had always been the practice of paper manufacturers to run their paper engines during the entire twenty-four hours of the day. The wheel originally put in by the grantee was of the best kind then in use, and was superior in efficacy to the wheel then in use at the C. mill.[a] Ever since the grantee's mill was built, it was practicable to lower the wheelpit, and thereby to apply the water to the wheel so as to produce the same power by the use of a less quantity of water; but it did not appear that the actual position of the wheel was objected to by the grantor for twenty-five years, although, ten years after the wheel was built, a certain sum was paid, by a compromise between the parties, for excess of water used before that time. *Held,* on a bill in equity by the grantor against the grantee to prevent an excessive use of the water of the canal, (1.) that the grantee, within the limits expressed, had the paramount right to draw the water by night as well as by day, and not a mere right in common with the grantor or other mill-owners; (2.) that the quantity of water, to which the grantee was entitled, was not to be diminished by improvements in wheels or machinery since the original construction of the grantee's wheel; (3.) that the position of the grantee's wheel was authorized by the terms of the indenture and the understanding and acts of the parties, at least until objection was made and opportunity given to make such a change as to remove the objection; and that the bill could not be maintained.

BILL IN EQUITY to restrain the defendant from drawing an excessive quantity of water from the plaintiff's canal. Hearing before *Colt,* J., who reserved the case upon the pleadings and the report of a master for the consideration of the full court. The material facts appear in the opinion.

*M. P. Knowlton,* (*H. Morris* with him,) for the plaintiff.

*N. A. Leonard,* for the defendant.

GRAY, C. J. The rights of the parties depend upon the terms of the indenture between them of July 8, 1839.

By that indenture the plaintiff granted to the defendant "as much water as will be necessary to carry the machinery in a paper mill working eight engines, not exceeding one hundred and sixty pounds weight of rags to each; but the quantity of water so drawn is not to exceed the quantity necessary to carry six thousand spindles at the Cabot Mill No. 1, during the time

said Cabot Mill runs in the twenty-four hours, and using a wheel as large in proportion to the head and fall as is used in said mill, and of the same construction, unless an improvement is made before the wheel shall be constructed, in that case to be of the most approved model, if without additional expense ; the water is to be drawn from the canal at such distance from the surface, and applied to the wheel in such manner, as shall produce the greatest power with a given quantity of water."

The indenture further provided as follows : "Said manufacturing company or its assigns are also to have the privilege of drawing the water from said canal in the night-time, but they are not to draw so much water in the night-time as will prevent the pond from being full and the water running over the dam across the river one hour before sunrise in the morning." "In case the quantity of water named aforesaid, and drawn in the best manner to produce the most power, shall be insufficient to carry said machinery and eight engines, said manufacturing company or its assigns shall have the right to draw sufficient for the purpose aforesaid, by paying said canal company or its assigns at the rate of one dollar twenty-five cents per spindle for the additional quantity so drawn, to make the whole sufficient to carry said machinery and eight engines, but not to exceed what would be equal to eight thousand spindles in the whole."

The quantity of water, "necessary to carry six thousand spindles at the Cabot Mill No. 1, during the time said Cabot Mill runs in the twenty-four hours," is referred to as a limit of the quantity of water to be drawn by the defendant, not of the time during which it shall be drawn. The master finds that the Cabot Mill was run only twelve working hours a day, and that it has always been the practice of paper manufacturers (which must be presumed to have been known to both parties) to run their paper engines during the entire twenty-four hours of the day. The indenture expressly grants to the defendant the privilege of drawing the water in the night-time, provided it does not prevent the pond from being full and the water running over the dam one hour before sunrise in the morning. Within these limits, the defendant has the paramount right to draw the water by night as well as by day, and not a mere right in common with the plaintiff or other mill-owners.

The further restriction, " using a wheel as large in proportion to the head and fall as is used in said mill, and of the same construction, unless an improvement is made before the wheel shall be constructed, in that case to be of the most approved model, if without additional expense," clearly refers only to the Cabot Mill in its existing condition at the time of the contract, and to the original construction of the defendant's wheel; and the quantity of water necessary for the eight engines described (within the limits already mentioned) is a fixed measure of the power to which the defendant is entitled, and is not to be diminished by improvements in wheels or machinery since the original construction of the defendant's wheel. The master finds that the wheels originally put in by the defendant were of the best kind then in use, and were superior in efficacy to the breast wheel in use at the Cabot Mill.

The plaintiff further seeks to maintain the bill upon the additional clause (immediately following the one just quoted) by which " the water is to be drawn from the canal at such distance from the surface, and applied to the wheel in such a manner, as shall produce the greatest power with a given quantity of water ;" and upon the finding of the master that, ever since the defendant's mill was built, it has been practicable to lower the wheel-pit a foot and a half (as has in fact been done since the bill was filed) and that, if it had been so lowered, the water would have been applied to the wheel so as to produce the same power by the use of a less quantity of water. It may well be doubted whether this clause, in the connection in which it stands, could be construed as requiring such a change in the position of the wheel, unless it appeared — as it does not by the master's report — that it was known, when the wheel was originally built, that such a change was practicable. But it is unnecessary to decide that question, because it does not appear that the actual position of the defendant's wheel was ever objected to by the plaintiff before this bill was filed, although in 1860, by a compromise between the parties, a certain sum was paid " for excess of water used " by the defendant before that time. This position of the wheel must therefore be deemed to have been authorized by the terms of the indenture and the understanding and acts of the parties, at least until objection was made and opportunity given

to the defendant to make such a change as to remove the objection.

As the defendant is not shown to have made any unauthorized use of the water, or any use thereof beyond the amount necessary to carry eight thousand spindles, for which compensation is distinctly provided in the indenture and may be recovered by action at law, the *Bill must be dismissed.*